UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KB HOME,

    Plaintiff,

v.                                        Case No: 8:13-cv-2644-T-27EAJ

ANDREW SMITH, DANIEL KOEHLER,
PATRICK MCGETTIGAN, WILLIAM
CRISMON and ARMANDO OYOLA-
DELGADO,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Second Amended Complaint (Dkt. 50). The Second Amended Complaint is stricken *sua sponte*. Plaintiff is directed to replead the complaint.

Plaintiff's Second Amended Complaint is a "quintessential" shotgun" pleading, in which each count incorporates by reference all prior allegations. The Eleventh Circuit has criticized such pleadings. *See Davis v. Coca-Cola Bottling Co. Consol.* 516 F.3d 955, 979 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed."); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.* 305 F.3d 1293, 1295 n. 9 (11th Cir. 2002). And the Second Amended Complaint concretely demonstrates the "aggregate negative effects of shotgun pleadings." *Id.* at n.10. Each count in the Second Amended Complaint incorporates all of the preceding paragraphs, making it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Paylor v. Hartford Fire Ins. Co.*, ___ F.3d ___, No. 13-12696, 2014 WL 1363544, at *6-8 (11th Cir. Apr. 8, 2014); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,

1

77 F.3d 364, 366 (11th Cir. 1996). "When confronted with a shotgun pleading, the court is supposed to order repleading for a more definite statement of the claim." *Hickman v. Hickman*, ___ Fed. App'x. ___, 2014 WL 1613044, *2 (11th Cir. 2014).

**Pending Motions**

Pending when the Second Amended Complaint was filed was the Motion of Defendant Andrew Smith to Dismiss Count Four and to Sever the ACPA Claims Against Him From the ECPA Claims and Supporting Memorandum of Law (Dkt. 20) and Defendant Daniel Koehler's Dispositive Motion to Dismiss for Improper Pleading and Failure to State A Claim Upon Which Relief Can be Granted, Motion for More Definite Statement, and Motion to Sever Claims and Supporting Memorandum of Law (Dkt. 21).[1] These motions are DENIED as moot. In doing so, however, Smith and Koehler's arguments are addressed to provide guidance, and to avoid revisiting these issues. And Defendants are cautioned to comply with the Local Rules in the future.[2]

## I. BACKGROUND

According to the Second Amended Complaint, Plaintiff KB Homes developed Willowbrook, a condominium complex in Manatee County, Florida (Dkt. 50, ¶ 31). Each of the Defendants owned units in Willowbrook (*id.*, ¶ 33). The units have required extensive repairs and Plaintiff is paying Duell Construction, Inc. to perform these repairs (*id.*, ¶ 32). Defendants have attempted to have Plaintiff buy back their units and pay them damages and costs (*id.*, ¶ 34). Apparently unhappy

---

[1] The motions of Defendants Smith and Koehler were directed to Plaintiff's Amended Complaint, which was filed November 11, 2013 (Dkt. 12). On April 22, 2014, Plaintiff filed a Second Amended Complaint to add allegations regarding substitute service against Defendant Oyola-Delgado (Dkt. 50). The allegations against the other Defendants remained the same. As such, the order granting Plaintiff leave to file the Second Amended Complaint stated that the motions to dismiss (Dkts. 20 & 21) would carry forward as to the Second Amended Complaint (Dkt. 49).

[2] Both motions violate the twenty-five page limit set by Local Rule 3.01(a), which does not distinguish between table of contents, signature pages, and other content. In the future, pleadings that do not comply with the Local Rules will be stricken.

2

with Plaintiff and the quality of the construction, Defendant Smith registered the domain name "thekbhome.com," which is devoted to "disparaging KB Home's business reputation, criticizing the quality of KB Home construction, discouraging prospective buyers from purchasing homes developed by KB Home, and attempting to drive down the value of KB Home stock" (*id.*, ¶ 37).[3]

According to Plaintiff, Defendants have attempted to coerce Plaintiff into buying back their units or otherwise pay them consideration in exchange for the sale or transfer of "thekbhome.com" domain name and website (*id.*, ¶ 38). In addition, Defendants Smith, Koehler, and McGettigan, as well as other Willowbrook homeowners, participated in an "organized letter writing campaign" to Plaintiff's executives and government officials demanding that Plaintiff buy back their homes at purchase price, reimburse them for closing costs, improvements, and moving expenses, and pay an additional percentage of their homes' values for alleged health-related issues (*id.*, ¶ 39). Plaintiff also alleges that Defendants somehow "obtained" confidential emails between Dueall Construction and Plaintiff, which Plaintiff implies were "intercepted" by hacking into Dueall Construction's wireless hotspot and/or through burglary (*see id.*, ¶¶ 42-47, 64, 72).[4]

Plaintiff claims that Defendants engaged in cybersquatting, in violation of the Anti-CyberSquatting Consumer Protection Act, and conspiracy ("ACPA"), 15 U.S.C. § 1125(d). Plaintiff

---

[3] Plaintiff adopted the KB HOME trademark as its official corporate name (Dkt. 50, ¶ 20). Plaintiff owns and uses various registered trademarks associated with KB HOME, as well as a website with the domain name, "Kbhome.com" (*id.*, ¶¶ 24, 27).

[4] Dueall Construction maintained a construction trailer at Willowbrook which housed computers that used a mobile, password-protected hotspot to access the internet (Dkt. 50, ¶ 42). Defendant Crimson, an information technology professional, allegedly instructed some or all of the Defendants on how to intercept emails to and from Dueall Construction computers (*id.*, ¶ 44). McGettigan and "others working with Defendants" resided in close proximity to these computers, allegedly giving them access to hack in the WiFi hotspot (*id.*, ¶ 45). On May 3, 2013, McGettigan, Koehler, and "other residents of Willowbrook" were conversing outside the Dueall Construction trailer (*id.*, ¶ 46). McGettigan had a "two-inch thick stack of papers" from which he displayed, read, and questioned Dueall Construction's President, Salvatore Ventimiglia, about a confidential email correspondence between Dueall Construction and Plaintiff (*id.*). Defendants McGettigan, Koehler, Crimson, and Delgado later met to discuss the emails (*id.*).

also alleges that Defendants used and/or disclosed intercepted electronic communications in violation of the Electronic Communications Privacy Act ("ECPA") and conspiracy. 18 U.S.C. § 2511.

## II. PLEADING STANDARD

Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (citation omitted). The claimant is not required to set out in detail the facts upon which he bases his claim, but is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (citation omitted). Dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." *Id.* (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986). A motion to dismiss for failure to state a claim under Rule 12(b)(6) requires the complaint to be viewed in the light most favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000) (citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir. 1999)).

## III. DISCUSSION

### A. Count I: Defendant Koehler's Alleged Violation of the ACPA

Koehler contends Count I should be dismissed because Plaintiff has not alleged that he is the registrant or authorized licensee of "thebkhome.com." Koehler also argues that the allegations fail to establish that he "trafficked" in "thebkhome.com." Plaintiff argues that although it has not used the phrase "authorized licensee" in the Second Amended Complaint, its allegations may be construed

to allege that Koehler was Smith's authorized licensee. Further, Plaintiff contends that it has adequately pled that Koehler trafficked in an infringing domain name, which does not require that he be either a registrant or authorized licensee.

"Cybersquatting 'occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder.'" *Sound Surgical Techs., LLC v. Leonard A. Rubinstein, M.D., P.A.*, 734 F.Supp.2d 1262, 1275 (M.D. Fla. 2010) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir.2004)). A trademark owner asserting a claim under the ACPA must establish that "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to . . . the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004); *cf. Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 Fed. App'x. 252, 256 (11th Cir. N2006); *Sound Surgical Technologies, LLC*, 734 F. Supp. 2d at 1275. To be liable under the ACPA for using a domain name, the person must be "the domain name registrant or that registrant's authorized licensee. 15 U.S.C. § 1125(d)(1) ("A person shall be liable for *using* a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.") (emphasis added).

Koehler does not challenge Plaintiff's allegations with respect to the first, second, third and fifth elements. He argues that Plaintiff has not sufficiently alleged that he used, registered, or trafficked in the domain name. Plaintiff contends that liability attaches not only to the registrant of the domain name, but to an authorized licensee as well and that Koehler, as co-administrator of the

website, is an authorized licensee. Plaintiff also argues that by offering to sell the domain name to Plaintiff, Koehler trafficked in the domain name.

### i.   Plaintiff has adequately alleged that Koehler is Smith's authorized licensee

Plaintiff alleges that Koehler improperly used and trafficked in "thekbhome.com" (Dkt. 50, ¶ 35). Plaintiff alleges that Smith is the registrant of the domain name (*see id.*, ¶ 29). To state a claim against Koehler under the ACPA for using the domain name, therefore, Plaintiff must allege that he is an authorized licensee.[5] While Plaintiff does not use that phrase in the Second Amended Complaint, it does allege that Koehler was a "co-administrator" of "thekbhome.com" with Smith (*id.*, ¶ 36). Additionally, it alleges that Smith and Koehler "improperly used . . . 'thekbhome.com' to divert traffic from KB Home, to disparage it, damage its reputation, drive down its stock value, and otherwise cause harm to KB Home as part of a scheme to profit" by "attempting to coerce KB Home into buying back their Willowbrook condominiums or otherwise paying valuable consideration" (*id.*, ¶¶ 35-36). Koehler is also alleged to have offered "thekbhome.com" for sale to Plaintiff's executives (*id.*, ¶ 40).

Based on the allegations, particularly considering that Koehler was a co-administrator of the website, it can plausibly be inferred that Koehler was Smith's authorized licensee in that he was a person to whom Smith gave permission or authority to act with respect to the domain name. *See Hamptons Locations, Inc. v. Rubens*, 640 F. Supp. 2d 208, 215 (E.D.N.Y. 2009); *Hamptons Locations, Inc. v. Rubens*, 01CV5477DRHWDW, 2005 WL 2436209, *8 (E.D.N.Y. Sept. 30, 2005) (Where the defendant was "involved in the development, launching, and operation of the website," a trier of fact could circumstantially infer authorized licensee.).

---

[5] ACPA does not define the term "authorized licensee." However, Black's Law Dictionary defines "license" as "[a] permission and "licensee" as "[o]ne to whom a license is granted." Black's Law Dictionary (9th ed. 2009). "Authorize" is defined as "[t]o give legal authority; to empower" or "[t]o formally approve; to sanction." *Id.*

### ii. Plaintiff has adequately alleged that Koehler trafficked in the domain name

"[T]he term 'traffics in' refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration." 15 U.S.C. § 1125(d)(1)(E). An offer to sell a domain name may be sufficient to evidence trafficking. *See Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 549 (6th Cir. 2003) ("Registering a famous trademark as a domain name and then offering it for sale to the trademark owner is exactly the wrong Congress intended to remedy when it passed the ACPA."). Indeed, the person's "offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services" is a factor to consider in determining bad faith. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI). However, a mere offer to sell by itself does not evidence unlawful trafficking. *Sound Surgical Tech., LLC*, 734 F. Supp. 2d at 1277 (citing *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270 (4th Cir. 2001) ("The ACPA was not enacted to put an end to the sale of all domain names.")).

Accepting Plaintiff's allegations as true, they are sufficient to plausibly support Plaintiff's claim that Koehler unlawfully trafficked in the domain name. Although merely offering to sell to Plaintiff, without more, would not evidence a bad faith intent to profit, that question would be better answered after discovery.

### B.  Count IV: Conspiracy to Violate the ACPA

Smith and Koehler contend that Count IV should be dismissed because the allegations of conspiracy are conclusory and none of the other conspiracy defendants can be sued for violating the ACPA itself.

7

"A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Charles v. Florida Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008) (citation omitted). Consistent with Rule 8, "[m]ore than mere conclusory notice pleading is required. ... [A] defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984); *Shell v. U.S. Dep't Of Hous. And Urban Dev.*, 355 Fed. App'x 300, 307 (11th Cir. 2009) (The plaintiff's "bare assertion that a conspiracy occurred [was] insufficient to state a claim."). As such, "[a] complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Fullman*, 739 F.2d at 557 (citation omitted).[6] While "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage, . . . a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Plaintiff has alleged facts which, if true, circumstantially support the existence of an agreement between Smith and Koehler, including overt acts by Smith and Koehler. Smith and Koehler operated a website using the domain name "thekbhome.com," to divert internet traffic from Plaintiff's website to 'thekbhome.com" by using a name confusingly similar to Plaintiff's

---

[6] *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 1974, 167 L.Ed.2d 929 (2007) (dismissing complaint alleging antitrust conspiracy; holding that a complaint must contain enough factual matter which, taken as true, suggests that an agreement was made—an allegation of parallel conduct and a bare assertion of conspiracy do not alone suffice); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1296 (11th Cir. 2010) (where plaintiffs "merely offered conclusory allegations of agreement accompanied by statements of parallel behavior, which just as easily suggest independent, lawful action," they failed to plausibly allege a conspiracy to commit RICO violations).

trademarks, used the website/domain name to criticize and disparage Plaintiff, and then offered to sell the domain name to Plaintiff, all in an attempt to coerce Plaintiff to buy back their units or otherwise pay them valuable consideration. That conduct is not the sort of independent, parallel conduct that was found insufficient in *Twombly*. *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965. Rather, the allegations are of a single scheme that suggests an agreement between these two Defendants.[7] In addition, as discussed, the allegations regarding Koehler's violation of the ACPA are plausible.[8]

### C. Count V: Conspiracy to Violate the ECPA

Koelher contends Count V should be dismissed because it does not allege a violation of the ECPA and even if it did, there is no allegation that Koehler agreed to a plan to intercept, use, or disclose the emails or that he committed any overt act in furtherance of a conspiracy to do so.

The ECPA "generally prohibits the intentional 'interception' of 'wire, oral, or electronic communications.'" *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003) (citing 18 U.S.C. § 2511(1)). The ECPA also prohibits the intentional use or disclosure of the contents of any electronic communication with knowledge that the information was obtained through the

---

[7] Plaintiff's allegation of an agreement among defendants other than Smith and Koehler is wanting. That the other Defendants have also demanded that Plaintiff buy back their units, engaged in an organized letter writing campaign to that end, and obtained intercepted email communications between Plaintiff and Dueall Construction demonstrates conduct that may or may not be related to the allegations regarding use or trafficking of the "thekbhome.com." "'[W]hen allegations of parallel conduct are set out . . . they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1294 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966). No other Defendant, however, has moved to dismiss this claim.

[8] Smith and Koehler also intersperse their various arguments with assertions that their First Amendment rights bar Plaintiff's ACPA claims. This argument is premature. If their conduct is found to violate the ACPA, then it will not be protected by the First Amendment. *See S. Co. v. Dauben Inc.*, 324 Fed. App'x 309, 317 (5th Cir. 2009); *Coca Cola Co. v. Purdy*, 382 F.3d 774, 787 (8th Cir. 2004).

interception of an electronic communication. 18 U.S.C. § 2511(1)(c)-(d).[9] The Eleventh Circuit has held that "a contemporaneous interception—i.e., an acquisition during 'flight'—is required to implicate the [ECPA] with respect to electronic communications." *Id.* at 1048-49.

Plaintiff's allegations of a conspiracy to violate the ECPA are insufficient for at least two reasons. The shotgun nature of the Second Amended Complaint makes it virtually impossible to know which allegations are intended to support the claim of conspiracy to violate the ECPA. Additionally, Plaintiff does not adequately allege an agreement to violate the ECPA. At best, Plaintiff's allegations suggest that Defendants (with the exception of Smith) may have discussed someone's interception (or theft) of emails after-the-fact.

Accordingly,

1. The Second Amended Complaint (Dkt. 50) is **STRICKEN**. Plaintiff is directed to replead in compliance with the Federal Rules of Civil Procedure and this Order, within **14 days**.

2. The Motion of Defendant Andrew Smith to Dismiss Count Four and to Sever the ACPA Claims Against Him From the ECPA Claims (Dkt. 20) and Defendant Daniel Koehler's Dispositive Motion to Dismiss for Improper Pleading and Failure to State A Claim Upon Which Relief Can be Granted, Motion for More Definite Statement, and Motion to Sever Claims (Dkt. 21) are **DENIED as moot**. Their requests to sever are denied without prejudice.

**DONE AND ORDERED** this 13th day of May, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[9] While the proscriptions contained in 18 U.S.C. § 2511 are criminal in nature, 18 U.S.C. § 2520 grants private individuals a civil cause of action based on violations of § 2511. *See* 18 U.S.C. § 2520.

10